# ALBERT G. LULL *et al.*

### *v.*

# THE CITY OF CHICAGO

1. STREET—*whether its location is determined by monuments, or measurement as shown in plat.* The statute having required persons laying out additions, etc., to towns or cities, to mark the location of streets and public grounds by stones set in the ground, from which to make future surveys, when there is a discrepancy between such monuments and the measurements appearing in the plat, the former will govern and control the latter in determining the location of the street. Such stones will be regarded with the same force and binding effect as original monuments erected by government surveyors.

2. SAME—*corporate authorities have no right to change location of.* A party laying out land into lots and streets has the right to locate the streets where he chooses, and when he has erected stones to show where a street is located, and staked lots abutting on each side of the same, and sold lots

with reference to it, which have been improved, and the location of the street has been acquiesced in for twenty years by the public, the purchasers of the lots, and the city, taking the street in trust for the public, will be bound by the monuments in determining the location of the street, and the city will be enjoined if it attempts to change its actual location.

3. DESCRIPTION OF LAND—*monuments control as to boundary.* Where monuments and admeasurements are both mentioned in the description of land conveyed, the purchaser must hold by the boundaries given by the monuments.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a bill for an injunction, filed by Albert G. Lull, John McDowell, Jacob Franz, Frederick Geist, James O'Brien, Henlon Filteau, Winnifred Hogan, Henry Schultz, Michael Geary, Katharine Schultz, and Adolph Dietz, against the city of Chicago. The object of the bill and facts of the case are stated in the opinion. The court below, on the hearing, dismissed the bill for want of equity, and the complainants, Albert G. Lull, Henlon Filteau, Winnifred Hogan, James O'Brien, and Jacob Franz, appealed.

Messrs. NICHOLS, MCKINDLEY & MORRISON, for the appellants.

Mr. M. F. TULEY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of Cook county, by appellants, to enjoin appellee, the city of Chicago, from constructing certain improvements on Fourteenth street, in the manner in which the city was constructing the same.

It appears by the record that Matthew Laflin became the owner of a tract of land containing about 5½ acres on the north-east quarter of section 21, in a certain township in Cook county, by purchase from one Heacock. In 1848, on April the 7th, Laflin caused the said tract of land, which was then

open prairie, to be surveyed and subdivided by one Asa F. Bradley, then county surveyor, into lots, from 1 to 56 inclusive. A street 40 feet wide was laid out through the tract, running east and west from Clark to State street. Stakes were stuck on the north and south lines of the street and at the front corners of the lots fronting on the street as surveyed. The street was then named Liberty street, but it has since been changed to Fourteenth street. A stone was set at the north-east and north-west corners of this street. The surveyor made a plat of the subdivision, which was certified to by him, and acknowledged by Laflin, and recorded in the recorder's office in Cook county on the 8th day of April, 1848.

Soon after the survey, Laflin had the street worked and graded according to the survey as it was designated by the stones and stakes of the surveyor. He then sold lots and gave possession of the same by number, as indicated by the surveyor's stakes.

Appellants purchased their lots fronting south on Fourteenth street; took possession and improved them as they were staked out at the time of the original survey, and have occupied and improved according to the stones and stakes set by Bradley.

Soon after the land was subdivided, the city took possession of the street as it was located by the stones and stakes set by Bradley, and have worked, improved and controlled it ever since. No change whatever has been made in the location of the street from 1848 to 1871, but it has all the time been occupied and used by the city and the public as it was marked out by Bradley by the stones and stakes set when he made the original survey.

In August, 1870, the city passed an ordinance by which Fourteenth street was to be improved from Clark to State street, as described in the ordinance, with curb walls, leaving a road bed between the same 28 feet in width, the curb walls to be located in such manner as to leave the road bed in the centre of the street. The lots in this subdivision

were assessed to pay for the improvements, and appellants paid so much as was assessed to each of their lots.

On or about the 1st of April, 1871, appellee commenced the improvement on the street. The city located the north curb wall within a few inches of the north line of the street, and the south curb wall about 12 feet north of the south line of the street as originally surveyed and staked, and located the roadway on the north 28 feet of the street, instead of the middle of the street, which left 12 feet space between the south line of the road bed and the south line of the street, and no space between the north line of the road bed and north line of the street.

This action of the city was predicated on the alleged theory that Fourteenth street should be six feet further north, according to recent surveys that had been made by the city. In other words, the city proposed, without any judicial determination of the true location of the street, to force it, by constructing the improvement, six feet further north.

This action of the city is based on the fact that the plat of Laflin's subdivision shows the north line of the subdivision to be 17 chains and 18 links south of the north-east corner of the north-east quarter of section 21, and, on actual measurement, it appears to be 17 chains and 24 links, and inasmuch as the street, according to this measurement, is six feet too far south, it is intended by the city that the measurement must control the location of the street.

It will, however, be seen, by reference to the plat, that the street is not only located by describing it as being a certain distance from the north-east corner of the north-east quarter of section 21, but it is located by means of monuments, and the question to be determined in this case is, which shall govern.

These stones, that were placed at the north-west and north-east corners of Fourteenth street as monuments, were placed there by the requirement of the statute of the State, which reads as follows:

"The county commissioners, proprietor or proprietors of the town, addition or subdivision of out-lots, by themselves or agent, shall, at the time of surveying and laying out of the same, plant and fix at the corner of the public ground, or at the corner of a public lot, if any there be, and if there be none, then at the corner of some one of the in-lots in the town, and at the corner of each out-lot, a good and sufficient stone of such size and dimensions, and in such manner as the surveyor shall direct, for a corner from which to make future surveys; and the point or points where the same may be found shall be designated on the plat or map." Gross, page 102, sec. 37.

In Laflin's subdivision there was but one street dedicated to the use of the public, and that was the street in controversy, extending from State to Clark street, this being the only public ground in the subdivision. The stones were erected to show the north line of the street, and to serve as a corner from which to make future surveys. Can it be said that these monuments, that were thus established under the direction of the statute, must give way and be controlled or moved by measurement? So far as the rights of the grantees of Laflin, and the city are concerned, we see no reason why these monuments should not be regarded with the same force and binding effect as original monuments erected by government surveyors.

Laflin being the owner of this tract of land, he had a right to manage and dispose of it as he saw proper, subject to the laws of the State. When he subdivided it into lots and a street, he had the right to locate the street where he saw proper. The survey fixed the boundaries of the lots and the street. The survey is the original work. The plat is made from it, and intended to be a faithful representation of it. The city took the title to the street, as it was surveyed, in trust for the public. The purchasers of the lots of Laflin, and the city, are bound by the monuments erected by Laflin to determine the location of the street and the lots.

Where monuments and admeasurements are both mentioned in the description of land conveyed, the purchaser must hold by the boundaries given by the monuments. *Herr* v. *Bass*, 2 Mass. 382; *McClintock* v. *Rogers*, 11 Ill. 296; *Colvin et al.* v. *Fell et al.* 40 Ill. 426.

The reason for this rule is obvious. These monuments are facts definite and fixed, while plats indicating courses, distances and quantities are but descriptions or evidence which assist us in determining these facts. When a given point is established by a monument, so long as it can be identified, it can mislead or deceive no one, while, on the other hand, a point to be established by measurement is always more or less unreliable. The chains of surveyors are not always the same length. Chain carriers will vary in accuracy.

It is altogether probable that the discrepancy between the monuments and the measurement as now made, arise from the difference between the chains then and now used. Bradley, who made the survey, says there was a difference between the measure used in 1848 and the measure in use at the present time, but he can not tell to what extent. He further testifies that the stakes were set on the corners of the lots, and indicated the lines of Fourteenth street, according to the plat of Laflin's subdivision, and were correct according to the measure then used.

Other proof was introduced, which shows that, prior to 1848, the surveyor's chain in use was longer than the one in use since that time. This accounts for the location of the street six feet further north than it otherwise would have been located had the chain of the surveyor been the same length of those now in use. Under these circumstances it would be manifestly unjust, where parties have acquired rights of over twenty years' standing, to disregard the location of the street as it was originally made, and as it has been occupied and used for over twenty years, and establish new lines and a new street.

We think such a course would not only be unjust, but contrary to all well established rules governing this class of cases.

The decree will be reversed, and the cause remanded, with directions to the court below to enter a decree in conformity to the prayer of complainant's bill.

*Decree reversed.*